IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHIEF POMAJ-CHAKMAM-YAJALAJI, | |
| Plaintiff, | 2:26-CV-01091-CCW |
| v. | |
| MIGUEL SAGUE, JR, *et al.* | |
| Defendants. | |

**OPINION AND ORDER**

Pro se Plaintiff Chief Pomaj-Chakmam-Yajalaji is proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915. For the reasons that follow, the Court will DISMISS the Complaint WITHOUT PREJUDICE for failing to state a claim against Defendants pursuant to § 1915(e)(2)(B)(ii).

## I.   Background

On July 27, 2026, the Court granted Plaintiff's motion for leave to proceed *in forma pauperis*. ECF No. 5. The Complaint was then docketed later that day. ECF No. 6. The allegations in the Complaint, taken as true, are as follow.

Plaintiff is a longtime activist involved in issues related to, *inter alia*, environmental justice and sustainability, community education, and public health in and around Pittsburgh, Pennsylvania. ECF No. 6 ¶¶ 25, 29. Plaintiff also previously worked as an "Aborigine American Indian medicine woman[.]" *Id.* ¶ 28. In or around January 2024, Plaintiff became involved with the Climate Action Plan Justice Coalition ("CAPJC"). *Id.* ¶¶ 35–41. Plaintiff sought to "represent [her] people and contribute to the land acknowledgement and environmental justice work" through

her involvement with CAPJC. *Id.* ¶ 36. Defendants are six individuals,[1] as well as the Council of Three Rivers American Indian Center (COTRAIC), who, like Plaintiff, have been involved with CAPJC.[2] *Id.* ¶¶ 18-24.

Plaintiff alleges that, soon after she became involved in CAPJC, "Defendants began challenging Plaintiff's Indigenous identity, legitimacy, ancestry-related status, and standing." *Id.* ¶ 42. Defendants made statements casting doubt on the authenticity of Plaintiff's Native American ancestry during CAPJC meetings. *Id.* ¶¶ 43–44, 47, 50. In response, Plaintiff circulated a complaint regarding Defendants' statements to other CAPJC members. *Id.* ¶¶ 57–58.

Plaintiff's conflict with Defendants escalated in 2025. In May 2025, Plaintiff alleges that Defendant Helen Gerhardt informed her that she was "not welcome" to attend an upcoming environmental justice event organized by the Allegheny County Office of Sustainability. *Id*. ¶¶ 66–76. Plaintiff then contacted event organizers, who informed Plaintiff that, contrary to Ms. Gerhardt's warning, Plaintiff "was absolutely welcome" at the event. *Id*. ¶ 71. Also in May 2025, Defendants COTRAIC and Michael Sague Jr. published online statements questioning the validity of Plaintiff's Native American ancestry. *Id*. ¶¶ 77–93. Plaintiff alleges that the statement COTRAIC published online reached many of her contacts in environmental activism. *Id*. ¶¶ 94–97.

In June 2025, Mr. Sague, Jr. made comments questioning Plaintiff's physical appearance and Native American ancestry during a CAPJC meeting. *Id*. ¶¶ 105–12. In July 2025, both Mr. Sague, Jr. and Defendant Alaina E. Roberts made comments questioning the legitimacy of Plaintiff's Native American ancestry during a subsequent CAPJC meeting. *Id.* ¶¶ 125–37.

---

[1] The individual Defendants are Miguel Sague, Jr., Miguel Sague, III, Helen Gerhardt, Fitzhugh Shaw, Alaina E. Roberts, and Russell Simms.

[2] CAPJC is not named as a Defendant. *See* ECF No. 6 at 4–6.

Following the July 2025 CAPJC meeting, Plaintiff was increasingly excluded and alienated from environmental justice events in Pittsburgh. *Id.* ¶¶ 138–39. Plaintiff alleges that, during one such event in July 2025, Mr. Sague, Jr. "approached Plaintiff's table and stood near Plaintiff while looking at Plaintiff[,]" which "Plaintiff perceived . . . as intimidating and harassing in light of" Mr. Sague, Jr.'s prior statements regarding Plaintiff's ancestry. *Id.* ¶¶ 141–42. Plaintiff was so upset by this incident that she sought emergency medical treatment. *Id.* ¶¶ 144–45.

In October 2025, Plaintiff was informed by the Executive Director of Upstream Pittsburgh, an environmental organization with which Plaintiff was involved, that Defendant Fitzhugh Shaw had contacted Upstream and encouraged the organization not to associate with Plaintiff. *Id.* ¶¶ 159–161. According to Plaintiff, Mr. Shaw also falsely told Upstream that Plaintiff had made "statements . . . [that] Africans were not brought to America and that slavery did not happen." *Id.* ¶¶ 162, 164. Plaintiff alleges that the statements Defendants made questioning her Native American ancestry have caused severe distress and reputational harm, depriving her of, *inter alia*, grant funding. *Id.* ¶¶ 169–177. Plaintiff filed the instant lawsuit on May 27, 2026. ECF No. 1. Plaintiff asserts claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1985(3). ECF No. 6 at 30–33. Plaintiff also asserts various state law claims. *Id.* at 33-40.[3]

## II. Standard of Review

For claims filed in forma pauperis, § 1915(e) acts as a screening mechanism that authorizes dismissal for various reasons, including when the complaint "fails to state a claim on which relief may be granted[.]" 28 U.S.C. § 1915(e)(2)(B)(ii). Although these dismissals can occur "at any time[,]" *id.* § 1915(e)(2), they "are often made *sua sponte* prior to the issuance of process, so as to

---

[3] The Court has jurisdiction over Plaintiff's § 1981 and § 1985(3) claims, which raise federal questions, under 28 U.S.C. § 1331. The Court may exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

To dismiss a claim as frivolous, courts examine whether the complaint "lacks an arguable basis either in law or in fact[,]" *id.*, applying the same standard used to analyze a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *D'Agostino v. CECOM RDEC*, 436 F. App'x 70, 72 (3d Cir. 2011). Thus, in evaluating Plaintiff's Complaint, the Court will "accept all factual allegations as true, construe the complaint in the light most favorable to [Plaintiff], and determine whether, under any reasonable reading of the complaint, [she] may be entitled to relief." *Montanez v. Price*, 154 F.4th 127, 140 (3d Cir. 2025) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In addition, the pleadings of pro se litigants must be liberally construed. *Pearson*, 775 F.3d at 604.

## III.    Plaintiff Fails to State a Federal Claim

Plaintiff asserts federal claims under 42 U.S.C. § 1981 (Count I) and 42 U.S.C. § 1985(3) (Count II). The Court will first consider Plaintiff's § 1981 claim before turning to Plaintiff's § 1985(3) claim.

### A.    Plaintiff Fails to State a Claim Under 42 U.S.C. § 1981

To state a claim under § 1981 a plaintiff must allege: "(1) that the plaintiff is a member of a racial minority; (2) that the defendant intentionally discriminated against the plaintiff based on race; and (3) that the discrimination concerned the right to make and enforce contracts." *Liles v. Revetaw, Inc.*, No. 03-CV-88, 2009 WL 587430, at *4 (D.V.I. Mar. 6, 2009). Thus, a 1981 plaintiff "must initially identify an impaired contractual relationship, under which the plaintiff has rights." *Id.* (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006)); *see also Hitchens v. Cnty. of Montgomery*, No. 01-CV-2564, 2002 WL 207180, at *6 (E.D. Pa. Feb. 11, 2002) ("A

claim under Section 1981 must allege the actual loss of a contract interest, not merely the possible loss of future contract opportunities.") (quoting *McCrea v. Saks, Inc.*, No. 00-CV-1936, 2000 WL 1912726, at *3 (E.D. Pa. Dec. 22, 2000)).

Here, Plaintiff alleges that Defendants' statements regarding her ancestry harmed "existing and prospective contractual relationships" and her "reasonable expectations of future economic and professional relationships[.]"  ECF No. 6 ¶¶ 180, 217.  But Plaintiff does not identify any specific contract under which she had rights that was impaired by Defendants' conduct.  *See generally id.*  While Plaintiff alleges that she was denied a $5,000 grant from Neighborhood Allies and a $75,000 grant from Food Justice Fund because of Defendant's statements about her ancestry, Plaintiff does not allege that she ever had any contractual rights with respect to either organization. *Id.* ¶ 176.  And while Plaintiff alleges that she "had an active professional and contractual relationship with Upstream," such allegations are conclusory and must be disregarded, because Plaintiff does not allege the existence of any specific contracts she entered into with Upstream.[4] *Id*. ¶ 153  *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action" is insufficient to state a claim).

Because Plaintiff fails to allege that she held any contractual rights that were impaired by Defendants' conduct, she fails to state a § 1981 claim.  Accordingly, the Court will dismiss such claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  However, the Court will grant Plaintiff leave to amend her § 1981 claim.  *See Mansaray v. Wenner*, No. 1:21-CV-351, 2022 WL 463302, at *2 (W.D. Pa. Feb. 15, 2022) (Baxter, J.) ("[I]f a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment.").

---

[4] Plaintiff alleges that "Plaintiff's Upstream agreement and related contract payment/records are attached or identified as Exhibit J[,]" but no such contract or records were filed on the docket.  ECF No. 6 ¶ 152.

### B.      Plaintiff Fails to State a Claim Under 42 U.S.C. § 1985(3)

To state a claim under § 1985(3), a plaintiff must allege:  "(1) a conspiracy;  (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws;  and (3) an act in furtherance of the conspiracy;  (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Oliver v. Erie Cnty.* , No. 1:21-CV-162, 2022 WL 4610579, at \*5 (W.D. Pa. Sept. 30, 2022) (Fisher, J.).  Furthermore, because 1985(3) protects the rights and privileges of citizens of the United States, "[a] claim of defamation is not actionable under 42 U.S.C. [] 1985." *Ealy v. Diorio*, No. 3:09-CV-052, 2009 WL 545106, at \*2 (S.D. Ohio Mar. 3, 2009) (citing *Paul v. Davis,* 424 U.S. 693, 696 (1976))); *see also Banks v. Pittsburgh Trib. Rev.,* No. 07-CIV-336, 2007 WL 1314617, at \*5–6 (W.D. Pa. May 4, 2007) (Lancaster, J.) (dismissing § 1985(3) claim predicated on alleged "conspiracy to defame [Plaintiff] based on his race. . . . because a conspiracy to defame does not deprive Plaintiff of any federally protected right.").

Here, Plaintiff alleges that Defendants made antagonistic statements questioning her Native American ancestry and identity.  Plaintiff therefore alleges, at most, a conspiracy to defame her.  Because defamation is not actionable under § 1985(3), and because Plaintiff does not allege that Defendants conspired to deprive her of any federally protected right, she fails to state a § 1985(3) claim.[5]  Accordingly, the Court will also dismiss Plaintiff's § 1985(3) claim pursuant to

---

[5] Plaintiff does not allege that she was deprived of any First Amendment rights, because she does not allege that Defendants ever prevented her from exercising her free speech or assembly rights. *See* ECF No. 6.  The Court also notes that a 1985(3) predicated on deprivation of first amendment rights requires state action. *See United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 833 (1983) (1985(3) (claims against private conspiracies must be predicated on right protected from private, not just state, encroachment); *Max v. Republican Comm. of Lancaster Cnty.*, 587 F.3d 198, 200 (3d Cir. 2009) ("It is axiomatic that the First Amendment governs only state action, not the actions of private entities."); *Friends of Falun Gong v. Pacific Cultural Enterprise, Inc.*, 288 F.

28 U.S.C. § 1915(e)(2)(B)(ii).  As with Plaintiff's § 1981 claim, the Court will grant Plaintiff leave to amend her 1985(3) claim.  *See Mansaray*, 2022 WL 463302, at *2.  The Court will defer consideration of Plaintiff's remaining claims, which are brought under Pennsylvania law, until Plaintiff has had the opportunity to file an amended complaint.

**IV**.    **Conclusion**

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE for failure to state a claim pursuant to 1915(e)(2)(B)(ii). IT IS FURTHER ORDERED that Plaintiff may file an amended complaint on or before **August 19, 2026**, to address the above deficiencies.  If Plaintiff does not timely file an amended complaint, the dismissal of this case without prejudice will be converted to one with prejudice, without further action by the Court.

DATED this 29th day of July, 2026.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record

---

Supp. 2d 273 (2003) (Plaintiffs "allege that defendants influenced the state to deprive them of their rights under the First Amendment [but] readily concede that they do not claim any state involvement in the alleged conspiracy. This concession is fatal to their claim.").  Here, none of the Defendants are state actors.  Thus, even if Plaintiff alleged that Defendants deprived her of her First Amendment rights, she would still fail to state a 1985(3) claim.

cc (via United States mail)

Chief Pomaj-Chakmam-Yajalaji, *pro se*
2118 Lindsay Road
Pittsburgh, Pennsylvania 15221